NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3938
_____

DONNA KATZ,
                                        Appellant

v.

UPMC; UPMC HOLDING COMPANY, INC.; UPMC HEALTH NETWORK, INC.;
CHILDRENS' HOSPITAL OF PITTSBURGH OF UPMC; STACEY A. COTE
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-16-cv-01627)
District Judge: Honorable David S. Cercone
_____

Submitted on November 12, 2020

Before: HARDIMAN, SCIRICA, and RENDELL, *Circuit Judges*.

(Filed: November 17, 2020)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Donna Katz appeals the District Court's summary judgment in favor of the University of Pittsburgh Medical Center and related entities (collectively, UPMC). We will affirm.

I

Katz began working as a nurse at UPMC Children's Hospital in 1981 and was fired in February 2015. The termination did not come out of the blue. In 2014, Katz was written up for several policy violations: giving a patient medication at an incorrect dose rate; disregarding a safety measure designed to ensure that the patient received the medication at the proper rate; administering the medication without the proper filter; and twice failing to verify the medication in a bedside report. Those violations resulted in a "final warning" that noted that Katz had been suspended in 2011 for posting about a deceased patient on social media, and stated that "any other violation of any [hospital] Policy shall result in further corrective action, up to and including termination of employment." App. 555, 844.

On February 17, 2015, less than a year after the "final warning," Katz was fired for creating a hostile work environment on February 6, 2015. UPMC explained that, given Katz's disciplinary history and the fact that she had been "counseled on numerous occasions for inappropriate behavior[,] including rudeness," her misconduct on February 6 was the last straw. App. 473, 770, 905–06.

According to Katz, however, UPMC fired her because of her diabetes symptoms and in retaliation for requesting a disability accommodation and FMLA leave. Katz was

diagnosed with diabetes in 2007. To avoid hypoglycemic episodes and their symptoms—such as irritability—Katz must eat regularly to maintain her blood sugar levels. In 2014, Katz asked her supervisor, Stacey Cote, to change her work schedule so she could more easily manage her blood sugar levels on long, busy shifts. Cote agreed, allowing Katz to work two 12-hour shifts and two 8-hour shifts each week instead of the standard three 12-hour shifts. This arrangement apparently worked for Katz until February 6.

That day, Katz was scheduled for a 12-hour shift, but she forgot to bring snacks to work to control her diabetes. Katz claims that she was too busy to eat, which caused "a severe hypoglycemic episode" that made her "irritable and cranky" with several coworkers. Katz Br. 8. For example, when her clinical leader gave her an assignment, Katz responded insubordinately. She admits that she said "what the hell?"; UPMC claims she said something more profane. App. 219; Katz Br. 8. Katz denies the hospital's allegations that she purposely hung up the phone on the clinical leader; was rude to a nursing student; said she was "so sick of these stupid clinical leaders"; argued with a doctor over a patient's care; and threatened to hurt her coworkers. But she conceded that she was acting "crazy" due to her low blood sugar. App. 226–27. Katz also admits that she refused to get food even after her clinical leader told her she should do so. Katz thought she did not have time to eat because no other nurse was assigned to relieve her. Eventually, after Katz began shaking and crying, a coworker gave her snacks from a pantry reserved for patients.

On February 9, 2015, three days after her misbehavior, Katz requested intermittent FMLA leave and met with supervisor Cote, who was investigating the events of February

3

6. According to Katz, she requested regularly scheduled lunch breaks—with someone assigned to relieve her during that time—as a further accommodation to help her manage her diabetes and prevent future outbursts. Katz also claims that Cote did not investigate whether Katz experienced a hypoglycemic episode and rebuffed her request for an accommodation.

On February 17, 2015, UPMC fired Katz. Katz filed an administrative grievance challenging the decision but did not appeal after UPMC affirmed her firing at the first level of review.

In 2016, Katz filed a thirteen-count complaint against UPMC, alleging violations of federal, state, and local employment laws. The District Court granted UPMC's motion for summary judgment on eleven counts. Katz then filed, and the District Court granted, a motion for judgment under Rule 54(b) of the Federal Rules of Civil Procedure. Katz filed this timely appeal.

## II[1]

Katz raises three issues on appeal. She claims the District Court erred as a matter of law when it granted partial summary judgment because a reasonable jury could conclude: (1) she was terminated because of her disability; (2) UPMC failed to reasonably accommodate her; and (3) UPMC's stated reasons for her termination were pretextual.

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367(a). We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's summary judgment de novo. *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215 (3d Cir. 2015).

The District Court did not err. Although UPMC gave Katz a special work schedule to manage her diabetes, on February 6 she forgot to bring snacks to a 12-hour shift; refused to get food even though her supervisor urged her to do so; and mistreated her colleagues. UPMC explained that Katz's hostile behavior was the last straw after counseling and progressive discipline had failed, and Katz could not identify a similarly situated coworker whose treatment supports her claim that UPMC's reasons for firing her were pretextual.

Katz responds that swearing is "commonplace" among UPMC personnel and that nondisabled employees have not received discipline for it. Katz Br. 35–36. She argues that because only she was punished for swearing, there is a material factual dispute as to pretext. Katz emphasizes that a coworker, Robin Wargo, received no punishment for saying "you've got to be shitting me" in front of supervisor Cote, even though Wargo and Katz were both disciplined in the same 2011 incident involving improper social media posts. Katz Br. 36.

This line of argument fails because Katz has not alleged that her purported comparators had similar disciplinary histories, including a final written warning, notwithstanding the one overlapping incident involving Wargo. As to the claim that only Katz faced punishment of any kind for swearing, that argument oversimplifies Katz's February 2015 misconduct that triggered her termination. UPMC fired Katz not simply for cursing, but for creating a hostile work environment while on a final warning, after previous interventions addressing similar behavior. And unlike Wargo, who cursed after splitting her pants, Katz swore *at* a clinical leader. In sum, Katz's pretext argument

5

misses the mark because it ignores the cumulative effect of her misconduct, both on February 6 and for several years prior.

Katz challenges many aspects of the District Court's ruling, but we need not address her other objections because her failure to raise a material factual dispute about pretext is dispositive as to the discrimination and retaliation claims. *See Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014). And as for her failure to accommodate claim, the record shows that UPMC changed Katz's work schedule as she requested, and her clinical leader urged her to eat on February 6. On this record, the District Court properly concluded that UPMC did not discriminate, retaliate, or fail to accommodate Katz and that no material factual dispute precluded summary judgment on these claims.

\*     \*     \*

For the reasons stated, we will affirm the District Court's judgment.